UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NO FAULT LLC                                                CIVIL ACTION

VERSUS

STOCKMEIER URETHANES U.S.A.,                NO. 24-00578-BAJ-EWD
INC.

### RULING AND ORDER

Before the Court is Defendant's **Motion To Dismiss And Motion For Costs And Attorney's Fees (Doc. 23).** Plaintiff opposes Defendant's Motion. (Doc. 26). Defendant filed a Reply Brief. (Doc. 27).

For the reasons below, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART.**

### I. BACKGROUND AND PROCEDURAL HISTORY

This is a product liability action. (Doc. 1; Doc. 8). Plaintiff alleges that Defendant manufactures and sells a polyurethane binder called Stobielast® S 136 (the "Binder"). (Doc. 8 at ¶ 6). The Binder, when combined with rubber components or granules, is allegedly used to create safety surfacing for use under playground equipment and on ball fields, walking and jogging tracks, and various types of outdoor recreational surfacing. (*Id.* at ¶ 8).

Plaintiff allegedly purchased nearly $2 million of Defendant's Binder, both directly and through third parties, between 2020 to 2023. (*Id.* at ¶¶ 7–8). Plaintiff alleges that it incorporated the Binder into safety surfacing in various playground facilities and other multipurpose recreational facilities throughout the United States.

(*Id.* at ¶ 10). Thereafter, more than 20 of Plaintiff's customers allegedly reported performance issues with Plaintiff's safety surfacing, which was made with Defendant's Binder. (*Id.* at ¶¶ 12–13; 21).

Plaintiff allegedly notified Defendant that it believed the Binder was responsible for the product failures because it was the only common factor and common product used at each of the sites exhibiting failures. (*Id.* at ¶ 13). Plaintiff allegedly replaced or repaired the surfacing at issue at its own expense, incurring significant loss and damage. (*Id.* at ¶ 18). Plaintiff also alleges diminution in business reputation. (*Id.* at ¶ 19).

Plaintiff asserts six causes of action against Defendant: (1) redhibition; (2) product liability; (3) breach of warranty of fitness for use; (4) violation of the Louisiana Unfair Trade Practices Act; (5) negligent or intentional misrepresentation; and (6) legal subrogation. (*See generally id.*). Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332. (*Id.* at ¶ 3). Where jurisdiction is founded on diversity, federal courts must apply the substantive law of the forum state. *Meadors v. D'Agostino*, No. CV 18-01007-BAJ-EWD, 2020 WL 1529367, at *3 (M.D. La. Mar. 30, 2020) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Defendant moved to dismiss Plaintiff's Amended Complaint for *forum non conveniens*. (Doc. 12). The Court denied Defendant's motion. (Doc. 45).

Now, Defendant moves to dismiss the entirety of Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 24). For the following reasons, Defendant's Motion will be **GRANTED IN**

**PART** and **DENIED IN PART.**

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### III.  DISCUSSION

In its Motion, Defendant asks the Court to dismiss Plaintiff's Amended Complaint for failure to state a claim, arguing the following: (1) the Louisiana Product Liability Act ("LPLA") offers the exclusive theory of liability against Defendant; (2) Plaintiff fails to adequately allege facts that, if true, meet the requisite elements of its LPLA claims; and (3) Plaintiff's Complaint merely "regurgitate[s]" the elements of redhibition. Defendant also asks the Court to award it attorney's fees and costs, arguing that Plaintiff's LUTPA claim is groundless, made in bad faith, and asserted to harass Defendant. The Court will address each argument in turn.

### A. Whether the Louisiana Products Liability Act Bars Plaintiff's Other Claims.

Defendant argues that because it is a "manufacturer" under the LPLA, the LPLA offers the exclusive theory of liability against it, and Plaintiff's claims outside of the LPLA must be dismissed. (Doc. 24 at 4–5). Plaintiff asserts five claims against Defendant outside of the LPLA: (1) redhibition; (2) breach of warranty of fitness for use; (3) violation of the Louisiana Unfair Trade Practices Act; (4) negligent or intentional misrepresentation; and (5) legal subrogation. (Doc. 8).

The LPLA's exclusivity provision provides that the LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev. Stat. § 9:2800.52. The LPLA clarifies that a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Id.* "Damage" is defined as "all

4

damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1, and 2315.2 allow recovery." *Id.* § 9:2800.53(5). Damage also includes "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product[, but] only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,' does not allow recovery for such damage or economic loss." *Id.*

The LPLA defines a "[m]anufacturer" as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. Rev. Stat. § 9:2800.53(1). A manufacturer also includes, *inter alia*, anyone "who incorporates into the product a component or part manufactured by another manufacturer." *Id.* § 9:2800.53(1)(c). To bring it together, "[m]anufacturing a product means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." *Id.* § 9:2800.53(1).

"Following that clear language, Louisiana state courts (including the Louisiana Supreme Court), U.S. District Courts, and the [United States Court of Appeals for the Fifth Circuit] have almost uniformly held that the LPLA bars any non-LPLA claim (except for claims arising under the redhibition articles) against a manufacturer for damage caused by its products."[1] *McKinney v. Superior Van & Mobility, LLC*, No. CV 20-1169, 2021 WL 1238906, at *4 (E.D. La. Apr. 2, 2021)

---

[1] "The only exception (if it can be called that) to this general rule is very narrow: a manufacturer may be held 'vicariously liable for their employees' negligence.'" *McKinney*, 2021 WL 1238906, at *4 (citing *McCleary v. Elekta*, No. 19-52, 2019 WL 5295699, at *3–4 (W.D. La. Oct. 18, 2019) (collecting cases and rejecting the plaintiff's attempt to hold the defendant liable under *both* the LPLA and general negligence theories).

5

(citing *Reynolds v. Bordelon*, 172 So. 3d 607, 612, 615 (La. 2015) (refusing to "accept a *general* alleged warranty for purposes of an *express* warranty claim" under the LPLA (emphasis added)); *Payne v. Gardner*, 56 So. 3d 229, 231 (La. 2011) ("[P]laintiff's exclusive remedy against [the manufacturer of an oil pumping unit] sounds in products liability as governed by the [LPLA]."); *Touro Infirmary v. Sizelar Architects*, 947 So. 2d 740, 744 (La. Ct. App. 4th Cir. 2006) ("[T]he LPLA subsumes all possible causes of action" except for those found in the redhibition articles); *Scianneaux v. St. Jude Medical S.C., Inc.*, 961 F. Supp. 2d 808, 811–812 (E.D. La. 2013) (Vance, J.) (rejecting the plaintiff's "freestanding theories" of, *inter alia*, negligence); *Automatique New Orleans, Inc. v. U-Select-It, Inc.*, No. 94-3179, 1995 WL 491151, at *3 n.2 (E.D. La. Aug. 15, 1995) (finding it "inappropriate to consider an independent negligence claim . . . because the LPLA is [plaintiff's] exclusive remedy against the defendants in this case"); *Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 658–61 (E.D. La. 2014) (Brown, J.) (rejecting, *inter alia*, a negligence claim against the manufacturer); *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000) (same), *aff'd*, 243 F.3d 200 (5th Cir. 2001); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (finding no "'intentional acts' exception to the [LPLA's] exclusive remedy provision"); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997) ("Louisiana law eschews all theories of recovery in this case except those explicitly set forth in the LPLA.")); *see also Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89, 111 (E.D. La. 2021) ("Courts consistently hold that the LPLA bars plaintiffs from making a claim against a

6

manufacturer for damage caused by a product under LUTPA."); *Reddick v. Medtronic, Inc.*, 2020 WL 2759077, at *4 (E.D. La. Apr. 14, 2020) (holding that the LPLA bars LUTPA claims); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 262 (5th Cir. 2002) ("Because there is no 'intentional acts' exception to the exclusive remedy provision of the LPLA, [plaintiff] cannot bring intentional tort claims against [defendant] under the Louisiana Civil Code for damages[.]"); *Baudin v. AstraZeneca Pharms. LP*, 413 F. Supp. 3d 498, 503 (M.D. La. 2019) ("Therefore, any claims of state law for fraud, negligent misrepresentation, and redhibition based on non-economic losses are improper and are dismissed with prejudice."); *Morris v. Wykle Rsch., Inc.*, No. CV 05-204-JJB-SCR, 2006 WL 8432812, at *3 (M.D. La. Jan. 19, 2006) ("As previously noted, there are four claims that are permitted and claims for fraudulent misrepresentation do not fall within the claims permitted under the LPLA.").

According to clear jurisprudence, all of Plaintiff's claims asserted outside of the LPLA, apart from Plaintiff's claim for economic damages under a theory of redhibition, are precluded by the LPLA. *See Boutte v. Stryker Biotech, LLC*, 67 F. Supp. 3d 732, 739 (M.D. La. 2014) ("Though the LPLA establishes the exclusive theory of liability against manufacturers for products that cause injury, both parties acknowledge that courts have interpreted the LPLA as preserving redhibition as a cause of action to the extent that the plaintiff seeks recovery of economic losses."); Plaintiff's arguments do not persuade otherwise.[2]

---

[2] Plaintiff argues that its claims are "at their heart contract-based and implied-warranty-

7

Accordingly, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's breach of warranty of fitness for use claim (Count III), LUTPA claim (Count IV), and negligent or intentional misrepresentation claim (Count V) are **DISMISSED WITH PREJUDICE**.[3] The Court will not dismiss Plaintiff's redhibition claim seeking economic damages based on the exclusivity of the LPLA.

### B. Whether Plaintiff Has Stated A Claim Under the Louisiana Products Liability Act.

Defendant argues that Plaintiff's LPLA claim fails because Plaintiff did not adequately allege facts that, if true, meet the requisite elements of its LPLA claims. (Doc. 24 at 6). Defendant argues that Plaintiff fails to adequately allege that its product is "defective" or "unreasonably dangerous in construction or composition" because Plaintiff did not allege: (1) a defect due to a "mistake" in the manufacturing process; (2) that the Binder materially deviated from Defendant's specifications; (3) a defect other than in mere conclusory language; or (4) facts that, if true, establish

---

based," and that Plaintiff pled its LPLA claim in the alternative. (Doc. 26 at 9). Plaintiff argues that the LPLA is "emphatically **not** the exclusive remedy available to" it. (*Id.* at 15). Plaintiff attempts to distinguish cases barring alternative theories of recovery against manufacturers outside of the LPLA, contending that those cases are personal injury cases, whereas this case is "primarily a contract-based case for economic damages and rescission based upon breach of contractual statements and implied warranties[.]" (*Id.* at 17).

Turning to Plaintiff's intentional or negligent misrepresentation claim, Plaintiff argues that the damages arising from Defendant's alleged misrepresentations are not "caused by a product" but instead are caused by Defendant's intentional or negligent misstatements of facts in the course of contracting and selling its product. (*Id.* at 19).

[3] Plaintiff's subrogation claim asks the Court to permit Plaintiff to pursue claims on behalf of its "end-customers," including redhibition, warranty, product liability, LUTPA, and other claims. (Doc. 8 at ¶ 54). Neither party has briefed the propriety of Plaintiff's subrogation claim, and the Court will not address it here, except to indicate that any claims Plaintiff may seek to pursue via subrogation are similarly limited as described here.

8

that the Binder is "unreasonably dangerous." (Doc. 24 at 7–9). Accordingly, Defendant asks the Court to dismiss Plaintiff's LPLA claim based on defect in composition or construction. (*Id.* at 9).

Plaintiff responds that it clearly alleged that: (1) there was a defect in the Binder (Doc. 8 ¶¶ 8, 13, 15, 16, 17, 23, 24, 25, 31); (2) Defendant manufactured the Binder (*Id.* ¶¶ 6, 9, 11, 18, 23); (3) the defect was present at the time it left Defendant's control (*Id.* ¶¶ 16, 17, 24, 25, 44); and (4) Plaintiff suffered damages as a result of the defects in Defendant's binder (*Id.* ¶¶ 12, 13, 15, 18, 19, 26, 27).

To maintain a successful claim under the LPLA, a claimant must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Baudin v. AstraZeneca Pharms. LP*, 413 F. Supp. 3d 498, 503 (M.D. La. 2019) (citing *Ayo v. Triplex, Inc.*, 457 Fed. Appx. 382, 385–86 (5th Cir. 2012); *Jack v. Alberto-Culver USA, Inc.*, 949 So.2d 1256, 1258 (La. 2007); La. Rev. Stat. § 9:2800.54(A)).

A product is "unreasonably dangerous" under the LPLA in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) failure to conform to an express warranty. *Baudin*, 413 F. Supp. 3d at 503 (citing La. Rev. Stat. § 9:2800.54(B)). The "unreasonably dangerous" characteristic must exist at the time the product left the manufacturer's control or result from a reasonably anticipated

9

modification or alteration of the product. *Baudin*, 413 F. Supp. 3d at 503 (citing La. Rev. Stat. § 9:2800.54(C)).

Here, Plaintiff appears to have adequately stated an LPLA claim against Defendant. Plaintiff alleges the following:

a. Defendant is a manufacturer of polyurethane adhesives and binders. (Doc. 8 ¶ 2).

b. The Binder, when combined with rubber components or granules, is used to create safety surfacing for use under playground equipment and on ball fields, walking and jogging tracks, and various types of outdoor recreational surfacing. The Binder's intended and specified use is as an additive to rubber components for purposes of forming a mix to be used to create such safety surfacing. Such use was described in Defendant's Technical Data Sheet for the Binder dated August 2020. (*Id.* ¶ 8).

c. Plaintiff's customers reported failures with Plaintiff's safety surfacing. (*Id.* ¶ 12).

d. The Binder was the only common factor and common product used at all sites exhibiting failures. (*Id.* ¶ 13).

e. These Binder failures have exhibited themselves in one (or both) of two ways: as a "flaking" of rubber components from the cap layer of the safety surfacing, or as delamination of the cap layer from the base or cushion layer exhibiting as "tunneling," "heaving," or "buckling." (*Id.* ¶ 15).

f. Plaintiff recently discovered due to Certificates of Analysis provided by

Defendant in late June 2024, that the Binder used in the sites reporting failures exhibited lower viscosity than earlier specifications provided by Defendant and Defendant lowered its acceptable viscosity range in its testing protocols in 2022 without notification to Plaintiff. (*Id.* ¶ 16).

g. The Binder supplied to Plaintiff has reduced viscosity levels. Reduced viscosity levels in the Binder negatively affect the adhesion properties of the Binder resulting in reduced adhesion and the flaking and delamination[.] (*Id.* ¶ 17).

h. Plaintiff's damages were proximately caused by a defect in the Binder that was present when the product left [Defendant's] control. As described by [Defendant], the Binder is "designed to produce elastic safety surfacing" when rubber granules are added to the binder per the Stobielast® S 136 Technical Data Sheet dated August 2020. In fact, when rubber granules were mixed with the Binder it did not produce long lasting safety surfacing. Instead, the Binder failed, resulting in property damage and the need for ongoing repair and replacement of safety surfacing. [Plaintiff's] damages include all damages caused by the product, including damage caused to Plaintiff's safety surfacing and costs incurred to repair or replace damaged surfacing into which the Binder was incorporated. (*Id.* ¶ 31).

i. The said defects in the Binder render the Binder unreasonably dangerous in construction or composition and/or in design as defined under La. R.S. 9:2800.54(B). (*Id.* ¶ 32).

11

    j.   Plaintiff's damage arose from a reasonably anticipated use of the Binder as specified by Defendant, including in its Technical Data Sheet. (*Id.* ¶ 33).

On a Motion to Dismiss, the Court must accept Plaintiff's well-pleaded facts as true and view those facts in the light most favorable to Plaintiff. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Here, Plaintiff's Complaint sufficiently states a claim under the LPLA against Defendant. *See* Fed. R. Civ. P. 8 (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Hollander v. Davis,* 120 F.2d 131, 133 (5th Cir. 1941) (stating that "sharp and technical condemnation of pleading[s]" no longer exist); *Hines v. Wainwright,* 539 F.2d 433, 434 (5th Cir. 1976) (stating that the federal policy is to decide "cases on the basis of substantive rights rather than technicalities was determinative").

Accordingly, Defendant's Motion to Dismiss Plaintiff's LPLA claim is **DENIED**.

### C. Whether Plaintiff Has Stated a Claim for Redhibition.

Defendant similarly argues that Plaintiff's redhibition claim fails because Plaintiff's Complaint merely "regurgitate[s]" the elements of redhibition. (Doc. 24 at 11). Defendant argues that Plaintiff's allegations of a redhibitory defect are merely conclusory and should be dismissed. (*Id.* at 14).

12

Plaintiff responds that it has clearly alleged that: (1) the product at issue had a vice or defect (Doc. 8 ¶¶ 8, 10, 13, 14, 15, 16, 17, 23, 24, 25, 28, 31, 44); (2) Defendant manufactured the product at issue (*Id.* ¶¶ 2, 6, 9, 11, 18, 23, 31); (3) Plaintiff would not have purchased the product had it known of the defects (*Id.* ¶ 12, 13, 15, 18, 19, 23 26); (4) the defect was non-apparent and existed at the time of the sale (*Id.* ¶ 24); and (5) specific damages proximately flowing from defects in the product (*Id.* ¶¶ 12, 13, 15, 18, 19, 26, 27).

In Louisiana, every sale "carries with it the legal warranty that the thing sold is free from hidden defects or redhibitory vices." *Johnson v. CHL Enters.*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000). A redhibitory defect is one that "renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code art. 2520. A purchaser may pursue a redhibition action and "recover directly from the manufacturer for breach of warranty, despite the fact that there was no privity of contract between them." *Aucoin v. S. Quality Homes, LLC*, 2007-1014 (La. 2/26/08), 984 So. 2d 685, 692. However, such an action will only lie against the manufacturer for "defects which 'existed at the time the thing was delivered by the manufacturer to the seller.'" *Id.* (quoting La. Civ. Code art. 2531); *see also Casablanca Convertors, Inc. v. Morning Paper, Inc.*, 627 So.2d 699, 700 (La. App. 3 Cir. 1993) ("In order to establish a prima facie case in redhibition, a buyer must show that a non-apparent defect existed at the time of sale."); *see also Leo v. Jeld-Wen, Inc.*, No. CV 16-00605-BAJ-EWD, 2018 WL 2187408, at *6 (M.D. La. May 11, 2018).

13

Plaintiff alleges the following:

a. The Binder manufactured/sold by Defendant contained latent defects that rendered the product either absolutely useless or its use so inconvenient and imperfect that Plaintiff would not have purchased it had Plaintiff known of the defect. (Doc. 8 ¶ 23).

b. The defect in the Binder existed at the time of the sales to Plaintiff and was not apparent to Plaintiff when the product was purchased and could not have been discovered by simple inspection. (*Id.* ¶ 24).

c. Defendant knew or should have known that the Binder was defective and would not perform as represented but failed to inform Plaintiff and it further misrepresented that its product was suitable for use in Plaintiff's safety surfacing and that no changes had been made to the Binder's design, composition, and performance despite that Defendant knew this not to be true. It is now known that, at the very least, the Binder used at the damaged sites tested significantly lower in viscosity levels than the represented viscosity parameters. (Doc. 8 ¶ 25).

d. Plaintiff has suffered and will continue to suffer substantial loss and damages as a result of its use of the defective Binder. (Doc. 8 ¶ 26).

For the same reasons the Court will not dismiss Plaintiff's LPLA claim, the Court will not dismiss Plaintiff's redhibition claim. Accordingly, Defendant's Motion to Dismiss Plaintiff's redhibition claim is **DENIED**.

### D. Whether Defendant is Entitled to Costs and Attorney's Fees under the Louisiana Unfair Trade Practices Act.

The Court has already dismissed Plaintiff's LUTPA claim. Defendant asks the Court to award it attorney's fees and costs under Louisiana Revised Statutes § 51:1409(A) because Plaintiff's LUTPA claim was groundless, made in bad faith, and asserted to harass Defendant. (Doc. 24 at 14). The statute provides, in part: "Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court *may* award to the defendant reasonable attorney fees and costs." La. Stat. § 51:1409(A) (emphasis added). Defendant argues that "[h]ad the plaintiffs or their counsel made the slightest inquiry, they would have determined without the least bit of difficulty that no legal basis for the LUTPA claim existed, and in fact has not existed since 1988 when the LPLA was passed." (Doc. 24 at 16).

Plaintiff responds that for the Court to award attorneys' fees and costs under LUTPA, Defendant would have to prove that Plaintiff's claim was both groundless and brought in bad faith or for purposes of harassment. (Doc. 26 a 19). Plaintiff alleges that Defendant has not made such a showing. (*Id.*).

The language of the statute is discretionary, providing that the Court "may" award reasonable attorney's fees and costs. The Court declines to do so on the record currently before it. Accordingly, Defendant's Motion for Attorney's Fees is **DENIED** in this respect.

15

### E. Plaintiff's Request for Leave to Amend.

In the alternative, Plaintiff asks the Court for leave to amend its Complaint under Federal Rule of Civil Procedure 15(a). (Doc. 26 at 22). Although leave to amend should be freely given, the Court need not grant leave to amend if an amendment would be futile. *Matter of: Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 236 (5th Cir. 2020) ("[W]here amendment would be futile, the court need not grant the plaintiff leave to amend."). Here, the law is clear that Plaintiff's non-LPLA claims are barred, apart from Plaintiff's claim for economic damages under a theory of redhibition. No amendment would change this reality, and thus, an amendment would be futile. The Court **DENIES** Plaintiff leave to amend.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion To Dismiss And Motion For Costs And Attorney's Fees (Doc. 23)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's breach of warranty of fitness for use claim (Count III) is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's claim under the Louisiana Unfair Trade Practices Act (Count IV) is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's negligent or intentional misrepresentation claim (Count V) is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that **Defendant's Motion For Costs And Attorney's Fees (Doc. 23)** is **DENIED.**

Baton Rouge, Louisiana, this 26th day of September, 2025

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**